UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MIDCAP FUNDING XLII TRUST,

    Plaintiff,

v.                                                          Case No. 19-C-376

BIRCH HILL REAL ESTATE, LLC, et al.,

    Defendants.

**DECISION AND ORDER DENYING MOTION TO DISMISS**

Plaintiff MidCap Funding XLII Trust (MidCap) filed this foreclosure action under the court's diversity jurisdiction, 28 U.S.C. § 1332, on March 13, 2019. MidCap seeks to foreclose on mortgages encumbering real property owned by Defendants,[1] a group of limited liability companies that lease the mortgaged property to be operated by Atrium Health and Senior Living (the Atrium Tenants) as senior living facilities. *See* Dkt. No. 1. Prior to this action, on September 7, 2018, MidCap Funding IV Trust and MidCap Funding VII Trust commenced a receivership against the Atrium Tenants pursuant to Chapter 128 of the Wisconsin Statutes in the Circuit Court for Wood County, Case No. 2018CV328. At MidCap's request a receiver was appointed and given authority to, among other things, manage and operate the senior living facilities. On December 14, 2018, also prior to this action, Defendants filed a separate action in Outagamie County Circuit Court, Case No. 18CV1190, against MidCap Funding VII Trust, MidCap Financial Services, LLC, and the guarantors of the Atrium Tenants' obligations. The Outagamie County action, which raises

---

[1] For purposes of this Decision and Order, "Defendants" refers to all defendants except Reliable Water Services, LLC, which was served on May 9, 2019 but has yet to file a responsive pleading. Dkt. No. 14.

contract, fraud, tort, and statutory claims, was removed to this court on March 25, 2019, and on July 8, 2019, the court denied Defendants' (identified in that action as Landlord) motion to remand the case to state court. *See* Case No. 19-CV-426 (E.D. Wis.). Noting the interplay between these three pending cases, Defendants have filed in the instant action a Rule 12(b)(1) motion to dismiss based on the prior exclusive jurisdiction and *Colorado River* abstention doctrines. Defendants also contend that MidCap failed to sufficiently allege diversity jurisdiction. For the reasons provided below, Defendants' motion will be denied.

## BACKGROUND[2]

For over 40 years, Larry Rice and members of his family (the Rice Family) were the owners and operators of 22 skilled nursing, rehabilitation, and assisted and independent senior living residences located in Wisconsin and Michigan through 22 separate operating entities (the Operating Entities). The facilities themselves and the underlying real estate are owned through 17 separate Real Estate Entities, the Defendants herein. In 2014, Rice, contemplating retirement, decided to sell the 22 facilities to Kevin Breslin, a trusted consultant who owned and operated similar facilities in New Jersey. On December 31, 2014, Breslin, on behalf of a limited liability company he controlled (apparently doing business as the Atrium Tenants), executed a series of agreements whereby Atrium (a) purchased the 22 Operating Entities for $1; and (b) executed a lease for the facilities owned by the Rice Family. Under the terms of the lease, the Atrium Tenants were to pay rent and all costs of operating the facilities, including taxes, maintenance, and repairs, and then eventually purchase the real estate for $90 million.

---

[2] Some of the background facts are taken from the allegations of the Defendants' amended complaint filed in their state court action in the Circuit Court for Outagamie County, which has since been removed and is pending before this court as Case No. 19-CV-426.

The financing for the transaction was provided by MidCap with whom Breslin had a prior relationship. MidCap was to refinance existing debt, with the understanding that rent payments by the Atrium Tenants would serve as Defendants' payments on the loan. MidCap was also to provide a line of credit for the Atrium Tenants' operations. Defendants executed a Credit and Security Agreement (Credit Agreement) by and among Defendants, MidCap Funding VII Trust (f/k/a MidCap Funding VII, LLC), as agent for the lenders, and MidCap Funding VI Trust (f/k/a/ MidCap Funding VI, LLC), as the sole lenders, through which the MidCap entities were granted a security interest in Defendants' accounts, assets, and contract rights, among other things, as collateral for the transaction (the Collateral). Compl., Dkt. No. 1, ¶¶ 23–25. Since its initial execution, the parties amended the Credit Agreement several times, and MidCap accepted and assumed the transacting MidCap entities' rights, titles, interests, and obligations under the Credit Agreement. *Id.* ¶¶ 26–29.

In accordance with the Credit Agreement, Defendants executed and delivered to MidCap Funding VI, LLC a note (Original Note) under which they agreed to pay MidCap Funding VI, LLC the principal amount of $50 million with interest. *Id.* ¶ 30. On or about February 4, 2015, Defendants executed two replacement notes (collectively, the Notes) for the same total amount as in the Original Note. *Id.* ¶¶ 34–35. All rights, titles, and interests in the Notes were later assigned to MidCap. *Id.* ¶¶ 37–39. To secure their obligations as defined in the Credit Agreement, and as part of the same transaction, Defendants executed mortgages (the Mortgages), assignments of leases and rents (AORs), security agreements, and fixture filings in the principal amount of $50 million covering, among other things, each entity's real property (collectively, the Property). *Id.* ¶¶ 41–55. The Defendant Borrowers also executed subordination and attornment agreements (Subordinations)

under which MidCap would be recognized as the owner of the Property in case of foreclosure. *Id.* ¶¶ 90–105. The Mortgages, AORs, and Subordinations were later assigned to MidCap. *Id.* ¶¶ 106–27.

Unfortunately, shortly after his purchase of the Operating Entities, Breslin engaged in a scheme to divert the income they generated to enrich and benefit himself. Defendants allege that "[b]eginning in 2015 and through 2018, Breslin caused $11.8 million to be siphoned out of the Operating Entities." Case No. 19-CV-426, Outagamie Cty. Am. Compl., Dkt. No. 1-1, at 12, ¶ 12. As a result of Breslin's conduct, the operations of the various facilities fell into severe financial distress. Utilities were under threat of being shut off, vendor payables were severely stretched so that food deliveries were in jeopardy, and general and professional liability insurance, as well as workers' compensation coverage, had lapsed because of nonpayment of premiums. There was no health coverage for employees, and the therapy vendor had threatened to pull therapists from the facilities and notify the state. Case No. 19-CV-376, Hr'g Tr., Dkt. No. 31, at 29. It was these facts that led MidCap to commence the action for the Atrium Receivership in September 2018 in an effort to preserve and protect the continued operations of the facilities.

MidCap's petition was granted without objection by the Circuit Court for Wood County, and Michael Polsky, an attorney experienced in business insolvency and, in particular, as a receiver for licensed healthcare facilities, was appointed. Polsky found the operations of Atrium Senior Living were more at risk than any other case with which he has been involved. He noted that Atrium and its principals are the subject of federal and state criminal investigations in Wisconsin and New Jersey. Because of the condition of the operations, Polsky brought in a national management firm to immediately take over operations. It took a great amount of work to determine the financial

4

condition of the Operating Entities, to develop a budget, and to restore credibility with vendors. Polsky, as receiver, also stepped into the shoes of Atrium and began drawing on the line of credit for operations. Because the income generated by the facilities did not cover the cost of operations, Polsky was not paying Defendants rent as called for by the leases. Even without paying rent, Polsky testified that the receivership was losing about $1 million a month, which MidCap is paying under the line of credit it originally established with the Atrium Tenants. Then, on May 7, 2019, the Atrium Receivership court granted the Defendant Landlord's motion to compel rent payments and ordered the State Court Receiver to pay the Atrium Tenants' rent payments due Defendant Landlord, thereby presumably increasing the amounts MidCap must pay to continue operations. While the funds advanced by MidCap to the Atrium Receiver under the line of credit increases the indebtedness to MidCap, the Rice Family did not guarantee the loans and thus are not responsible for any deficiency balance if a sale of the property generates proceeds less than the loan balance. The Receiver Court's order directing the Atrium Receiver to make rent payments to the Defendant Landlord is currently on appeal, with the rental payments being held in the trust account of counsel for the Defendant Landlord pending further order of the court.

In the case before this court, MidCap alleges that Defendants are in default under the Loan Documents, which comprise the Credit Agreement, Notes, Mortgages, AORs, Subordinations, and related documents. Specifically, MidCap alleges that Defendants are in default by reason of: "(a) failure to pay amounts due and owing upon the Loan Documents commencing with the regular monthly payment due on October 1, 2018, and each payment thereafter; (b) the failure to furnish financial statements for numerous calendar months as required pursuant to Section 4.1 of the Credit Agreement; (c) the failure to satisfy financial covenants for numerous calendar quarters as required

5

pursuant to Section 6.3 of the Credit Agreement; and (d) the failure to satisfy and comply with other operation and performance requirements. Dkt. No. 1, ¶ 128. Given these defaults, MidCap now seeks to foreclose on the Mortgages and recover the amounts due under the Loan Documents.

On April 30, 2019, MidCap filed a motion to appoint a receiver to manage the real property owned by the Defendant Borrowers and encumbered by the Mortgages (the Mortgaged Property) in an effort to avoid further losses and preserve the value of the property by insuring the continued operation of the facilities. Dkt. Nos. 8; 30-1. After considering the parties' briefs and the evidence presented in a May 29, 2019 motion hearing, the court granted MidCap's motion and entered an order appointing a receiver (Federal Court Receiver) for the Mortgaged Property. Dkt. No. 30. The court ordered that the Federal Court Receiver "take physical possession of, manage, operate and protect the Mortgaged Property." *Id.* at 3. The court also ordered that "the powers granted to the Receiver in this Order shall be exercised in a manner consistent with those powers exercised by the state court receiver appointed by the Circuit Court for Wood County in [the Atrium Receivership] and in consultation with the state court receiver." *Id.* at 16. This order, too, is on appeal. Dkt. No. 41.

Defendants' present motion concerns the jurisdictional "order of operations" and overlap, if any, of the three pending actions arising out of the December 2014 real estate transaction. As this action is the third action related to the same underlying transaction, Defendants argue that the doctrine of prior exclusive jurisdiction precludes this court from exercising jurisdiction. As alternative grounds for dismissal, they argue that the court should abstain from hearing this case under the *Colorado River* abstention doctrine or dismiss the complaint for MidCap's failure to sufficiently allege diversity jurisdiction. It is to this motion that the court now turns.

6

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the subject matter jurisdiction of the court. Fed. R. Civ. P. 12(b)(1). If a court determines that subject matter jurisdiction is lacking, it must dismiss the action. *See United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003), *overruled on other grounds by Minn-Chem, Inc. v. Agrium, Inc.*, 683 F.3d 845 (7th Cir. 2012). Jurisdictional challenges based on the prior exclusive jurisdiction and *Colorado River* abstention doctrines are properly considered under Rule 12(b)(1), *see, e.g.*, *Specialty Finance Group, LLC v. DOC Milwaukee, LP*, No. 10-C-315, 2010 WL 5419105, at *1, 6–8 (E.D. Wis. Dec. 22, 2010); *Allstate Insurance Co. v. A.O. Smith Corp.*, No. 15C6574, 2015 WL 6445529, at *1 (N.D. Ill. Oct. 23, 2015), as are challenges to the complete diversity of the parties, *see, e.g.*, *KM LPTV of Chicago-13, LLC v. S.O.S. Media Holdings, Inc.*, No. 14C10227, 2015 WL 12834764, at *2–3 (N.D. Ill. Sept. 15, 2015). When reviewing a Rule 12(b)(1) motion, "a district court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999) (citation omitted). "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Grafon Corp. v. Hausermann*, 602 F.2d 781, 783 (7th Cir. 1979) (citations omitted). "The burden of proof on a 12(b)(1) issue is on the party asserting jurisdiction." *United Phosphorus, Ltd.*, 322 F.3d at 946.

**ANALYSIS**

**A. Prior Exclusive Jurisdiction**

Defendants first argue that this action must be dismissed under the prior exclusive jurisdiction doctrine. The Supreme Court has held that where an "action is one *in rem* that court—whether state or federal—which first acquires jurisdiction draws to itself the exclusive authority to control and dispose of the *res* . . . ." *Kline v. Burke Const. Co.*, 260 U.S. 226, 235 (1922). The prior exclusive jurisdiction doctrine applies where

> two suits are *in rem* or quasi *in rem*, requiring that the court or its officer have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought, the jurisdiction of one court must of necessity yield to that of the other. . . . the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other.

*SJ Props. Suites v. Specialty Fin. Grp., LLC*, 733 F. Supp. 2d 1021, 1031 (E.D. Wis. 2010) (quoting *Penn Gen. Cas. Co. v. Pennsylvania*, 294 U.S. 189, 195 (1935)). An action *in rem* seeks to determine title to designated property, real or personal, and the rights of all persons claiming an interest in the property. *See Hanson v. Denckla*, 357 U.S. 235, 246 n.12 (1958). An action quasi *in rem* concerns only the interests of particular individuals in designated property and operates as an action between the identified parties. *Id.* In contrast, actions *in personam*, which impose a personal liability or obligation on one person in favor of another and seek relief in the form of damages or an injunction, do not call for the doctrine's application. *Id.*; *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 465–66 (1939).

Defendants argue that, in this action, MidCap seeks to invoke this court's jurisdiction over two categories of property over which Wisconsin state courts have already exercised *in rem* or quasi *in rem* jurisdiction: (1) rents due Landlord and (2) the Mortgaged Property. As to the rents,

8

Defendants claim that the Atrium Receivership court first exercised *in rem* jurisdiction over the rents given their filing of a claim for unpaid rent from the Atrium Tenants, *see* Dkt. No. 21-7, and the Atrium Receivership court's order directing the State Court Receiver to pay rent payments due Landlord. *See* Dkt. No. 21-1 at 14:15–18. As to the Mortgaged Property, Defendants argue that the Outagamie County Circuit Court first obtained quasi *in rem* jurisdiction over MidCap's purported security interest in the Mortgaged Property on February 19, 2019, upon the filing of an amended complaint adding MidCap entities as defendants. In the amended complaint, Landlord seeks to enforce its interest in the Mortgaged Property as part of its damage to property claim under Wisconsin Statute § 840.03. *See* Dkt. No. 21-3, ¶¶ 173–74, 177–78. MidCap argues in response that the instant action is the first and only *in rem* action concerning the Mortgaged Property and that none of the remedies sought in the Atrium Receivership and Outagamie County actions would affect the nature of the parties' interest in the Mortgaged Property.

Neither of the actions originating in state court calls for the application of the prior exclusive jurisdiction doctrine here. The Atrium Receivership action involved a stipulation for the appointment of a Chapter 128 receiver to, among other things, take control of the Atrium Tenants' property and take actions necessary to manage and operate the senior living facilities, including paying the ordinary and necessary expenses of owning, operating, and maintaining the value of the facilities. Dkt. No. 21-5. That action involves the exercise of jurisdiction over the Atrium Tenants' assets, whereas the instant action concerns MidCap's interests in the Mortgaged Property that is now subject to the Federal Court Receiver's control. These two matters are distinct. The Atrium Tenants do not own the property on which MidCap is seeking to foreclose; rather, Defendants are the owners of the facilities/real estate leased by the Atrium Tenants. The Atrium Receivership

9

court's order that the State Court Receiver pay (and MidCap fund) rent obligations due Landlord fails to create the jurisdictional conflict Defendants imagine, as enjoining a receiver to pay rent into an escrow account does not affect the nature of the interests in that property. Absent a jurisdictional overlap, the prior exclusive jurisdiction doctrine does not apply.

Nor does the Outagamie County action call for the doctrine's application. The Outagamie County action has been removed to this court. *See* Case No. 19-CV-426 (E.D. Wis.). Removal terminates a state court's jurisdiction over any property over which the state court exercised jurisdiction, thereby making the doctrine of prior exclusive jurisdiction inapplicable. *Sexton v. NDEX West, LLC*, 713 F.3d 533, 537 (9th Cir. 2013) (rejecting application of prior exclusive jurisdiction doctrine where action was appropriately removed to federal court); *Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1032 (8th Cir. 2012) (same). Moreover, where two suits are in the same court, the purposes for which the prior exclusive jurisdiction developed, namely the interests of comity and protection against piecemeal litigation, cease to be an issue. *Cf. Kline*, 260 U.S. at 231. Because the Outagamie County action was properly removed to this court, the prior exclusive jurisdiction doctrine is inapplicable.

## B. *Colorado River* Abstention

Defendants alternatively argue that this court should abstain from hearing this case under the abstention doctrine formulated in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). In *Colorado River*, the Supreme Court recognized the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* at 817. Despite this obligation, the Court "recognized that 'considerations of [w]ise judicial administration,' specifically regard for 'conservation of judicial resources and comprehensive disposition of litigation,' may

counsel abstention by federal courts in the face of pending actions in state court concerning the same matter." *Baek v. Clausen*, 886 F.3d 652, 663 (7th Cir. 2018) (internal quotation marks omitted) (quoting *Colorado River*, 424 U.S. at 817). The Seventh Circuit has adopted a two-part analysis to guide courts in deciding whether this sort of abstention is appropriate. *Id.*

"First, the court must determine whether the state and federal court actions are parallel." *Freed v. J.P. Morgan Chase Bank, N.A.*, 756 F.3d 1013, 1018 (7th Cir. 2014) (citation omitted). Where the proceedings are not parallel, the abstention doctrine does not apply. *Id.* "If, however, the court determines that the proceedings are parallel, the court must decide whether abstention is proper by carefully weighing ten non-exclusive factors." *Id.* These factors are:

> (1) whether the state has assumed jurisdiction over property;
> (2) the inconvenience of the federal forum;
> (3) the desirability of avoiding piecemeal litigation;
> (4) the order in which jurisdiction was obtained by the concurrent forums;
> (5) the source of governing law, state or federal;
> (6) the adequacy of state-court action to protect the federal plaintiff's rights;
> (7) the relative progress of state and federal proceedings;
> (8) the presence or absence of concurrent jurisdiction;
> (9) the availability of removal; and
> (10) the vexatious or contrived nature of the federal claim.

*Id.* (citing *Tyrer v. City of South Beloit, Ill.*, 456 F.3d 744, 754 (7th Cir. 2006)). There is a presumption against abstention, *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 646 (7th Cir. 2011), and if any substantial doubts exists "that the parallel litigation will be 'an adequate vehicle for the complete and prompt resolution of the issues between the parties' it would be a 'serious abuse of discretion' for the district court to stay or dismiss a case in deference to the parallel litigation." *AAR Int'l, Inc. v. Nimelias Enters. S.A.*, 250 F.3d 510, 518 (7th Cir. 2001) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)). "[B]ecause of the presumption

11

against abstention, absent or neutral factors weigh in favor of exercising jurisdiction." *Huon*, 657 F.3d at 648.

This action is not parallel with either of the actions originating in state court. To determine whether proceedings are parallel, the court "must examine whether 'substantially the same parties are contemporaneously litigating substantially the same issues in another forum.'" *Freed*, 756 F.3d at 1019 (quoting *Interstate Material Corp. v. City of Chicago*, 847 F.3d 1285, 1288 (7th Cir. 1988)). As previously discussed, this action concerns the issues of whether Borrowers defaulted under the Loan Documents and whether MidCap is entitled to a judgment of foreclosure on the Mortgaged Property, while the Atrium Receivership action concerns the administration of the Atrium Tenants' assets and the operations of the senior living facilities. The now-removed Outagamie County action concerns the issues of whether the guarantors of the Atrium Tenants breached their guaranties and whether MidCap assisted Breslin in undertaking a fraudulent scheme of self-enrichment. While these cases share a similar background and involve some of the same parties, each case presents distinct issues. Abstention under *Colorado River* is therefore inappropriate. *See Freed*, 756 F.3d at 1018.

Even were the Atrium Receivership and Outagamie County actions parallel, abstention would still be inappropriate under a weighing of the *Colorado River* factors.

**1. Whether the state has assumed jurisdiction over property**

The Atrium Receivership action concerns only the Atrium Tenants' assets, and to the extent that any interest in the Mortgaged Property is implicated in the Outagamie County action, that action is before this court and may always be consolidated. This factor weighs against abstention.

12

**2. The inconvenience of the federal forum**

The Outagamie County action has been removed to this court, located in Green Bay, Wisconsin. The Atrium Receivership action is in Wood County Circuit Court, located in Wisconsin Rapids, Wisconsin. Landlord notes that its home office is located in Appleton, Wisconsin, which is about thirty miles from Green Bay and about eighty miles from Wisconsin Rapids. The Green Bay court is not only the forum for the removed Outagamie County action, but it is also more convenient than a Wisconsin Rapids forum. This factor weighs against abstention. *See Gerald v. Collection Prof'ls, Inc.*, Nos. 01-1152, 01-1114, 01-1143, 2001 WL 793699, at *2 (C.D. Ill. June 26, 2001) (considering geographic proximity of state courts in weighing convenience factor).

**3. The desirability of avoiding piecemeal litigation**

The instant action is the only action concerning Defendants' alleged defaults and MidCap's rights under the Loan Documents and to foreclose on the Mortgaged Property. Although MidCap is asking that the Atrium Receivership court reconsider its order compelling the State Court Receiver to pay and MidCap to fund the Atrium Tenants' rent payments based on this court's order appointing a receiver over the Mortgaged Property, the filing of a motion for reconsideration and an appeal does not suggest that allowing these actions to run their course separately will waste judicial resources or that the public's perception of the legitimacy of judicial authority will worsen. *See Freed*, 756 F.3d at 1022. This factor weighs against abstention.

**4. The order in which jurisdiction was obtained by the concurrent forums**

The Atrium Receivership court never exercised jurisdiction over the Mortgaged Property. The removal of the Outagamie County action terminated any jurisdiction the Outagamie County Circuit Court ever acquired over the Mortgaged Property. This factor weighs against abstention.

13

### 5. The source of governing law, state or federal

State law will govern each of the claims in this action. This factor weighs in favor of abstention. *See Day v. Union Mines Inc.*, 862 F.2d 652, 660 (7th Cir. 1988) ("[A] state court's expertise in applying its own law favors a *Colorado River* stay.").

### 6. The adequacy of state-court action to protect the federal plaintiff's rights

This is the only action governing MidCap's right to recover under the Loan Documents and to foreclose on the Mortgaged Property based on Defendants' defaults. This factor weighs against abstention.

### 7. The relative progress of state and federal proceedings

This action has involved the court appointing a receiver over the Mortgaged Property, an order that is currently on appeal. The Atrium Receivership action has involved the (stipulated) appointment of a receiver over the Atrium Tenants' assets and an order compelling the receiver to pay administrative rents, the latter being on appeal. Neither of these cases has made marked progress relative to the other, and each may be delayed in light of the pending appeals. This factor weighs against abstention.

### 8. The presence or absence of concurrent jurisdiction

The Atrium Receivership court has not exercised jurisdiction over the Mortgaged Property, and to the extent that MidCap's interest in the Mortgaged Property is implicated in the Outagamie County action, which is now before this court, concurrent jurisdiction is not an issue, as the cases may always be consolidated. This factor weighs neutrally, which favors retention of jurisdiction. *See Huon*, 657 F.3d at 648.

### 9. The availability of removal

The Atrium Receivership action is in Wood County Circuit Court, and removal is unavailable. The Outagamie County action was properly removed to this court. This factor weighs neutrally, which favors retention of jurisdiction. *Id.*

### 10. The vexatious and contrived nature of the federal claim

The parties agree that this factor is inapplicable, as no federal claims exist in this action. This factor favors retention of jurisdiction, as "*absent* or neutral factors weigh in favor of exercising jurisdiction." *Id.* (emphasis added).

Even positing the existence of parallel actions, a weighing of the *Colorado River* factors, only one of which favors abstention, strongly supports retention of jurisdiction. Because this action is not parallel to any other pending action and because, if it were, the *Colorado River* factors weigh against abstention, the court declines to abstain under the *Colorado River* doctrine.

## C. Diversity Jurisdiction Allegations

Defendants' third and final basis for dismissal is the alleged insufficiency of MidCap's allegations of diversity jurisdiction in the complaint. In particular, Defendants claim that MidCap, a statutory trust, failed to adequately identify its own citizenship and that of Reliable Water Services, LLC (Reliable). Given MidCap's status as a statutory trust and Reliable's status as a limited liability company, Defendants claim that MidCap's complaint "must identify the names of [MidCap and Reliables'] shareholders/members and each of shareholders'/members' citizenship, and if [their] shareholders/members are themselves statutory trusts and/or limited liability companies, 'the members' members' [and shareholders' shareholders'] identities and citizenships.'" Defs.' Br. Supp., Dkt. No. 21, at 21 (quoting *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007)). Defendants argue that MidCap's allegations do not meet this bar.

15

The court disagrees. With respect to its own citizenship as a statutory trust and that of Reliable as a limited liability company, MidCap's complaint alleges:

> 1. Plaintiff, in addition to being the Agent and currently the sole Lender under the Credit Agreement, is a Delaware statutory trust with its principal offices located in Dublin, Ireland, and is owned by a series of entities formed under the laws of Delaware and Ireland which are in turn owned by a corporate entity formed under the laws of Ireland. MidCap Financial Services, LLC, an affiliate of Plaintiff, is the servicer of the Loan (as hereinafter defined) and has an office located at 7255 Woodmont Avenue, Suite 200, Bethesda, Maryland.
> . . .
> 19. Reliable Water Services LLC is a foreign company with a principal office at 301 West Wisconsin Avenue, Suite 400, Milwaukee, Wisconsin 53203.

Dkt. No. 1, ¶¶ 1, 19. The complaint later states: "Because each of the Defendants are citizens of different states from the Plaintiff, and because the amount in controversy exceeds $75,000.00, jurisdiction is proper under 28 U.S.C. 1332." *Id.* ¶ 22. These allegations are sufficient to carry MidCap's burden of alleging diversity jurisdiction. *See Andreshak v. Serv. Heat Treating, Inc.*, 439 F. Supp. 2d 898, 899 (E.D. Wis. 2006). Neither the Federal Rules of Civil Procedure nor the diversity jurisdiction statute require more particularized allegations. Indeed, Rule 8 of the Federal Rules of Civil Procedure requires "a short and plain statement of the grounds for the court's jurisdiction," which MidCap has provided here.

The Seventh Circuit cases upon which Defendants principally rely were decided on the basis of Circuit Rule 28, which provides: "If any party is an unincorporated association or partnership the [jurisdictional] statement shall identify the citizenship of all members." 7th Cir. R. 28; *Thomas*, 487 F.3d at 534; *Hart v. Terminex Int'l*, 336 F.3d 541, 543 (7th Cir. 2003); *Meyerson v. Harrah's East Chi. Casino*, 299 F.3d 616, 616–17 (7th Cir. 2002). But Circuit Rule 28 does not apply to proceedings in the district court. *Cf.* 7th Cir. R. 1 ("These [Circuit] rules govern procedure in the United States Court of Appeals for the Seventh Circuit."). Although MidCap's allegations

16

regarding its citizenship and that of Reliable, together with its allegation that it is completely diverse from all defendants in this action, are sufficient at this stage to survive a motion to dismiss, the court will direct that MidCap file a supplemental jurisdictional statement that better explains (e.g. in an organizational chart) the complex makeup of MidCap and identifies with greater particularity the citizenship of Reliable. *See, e.g.*, *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 625 (7th Cir. 1998) (noting district court's request for removing defendant to supplement its jurisdictional allegations); *Thomas & Betts Power Solutions LLC v. S.R. Bray LLC*, No. 10-cv-213-wmc, 2010 WL 1642948, at *2 (W.D. Wis. Apr. 21, 2010) (directing plaintiff to amend complaint to allege citizenship of each member of limited liability company parties).

As this court stated during the May 29, 2019 motion hearing when discussing the instant motion's argument as to the sufficiency of MidCap's allegations of diversity jurisdiction, "[c]ertainly defense are free to do discovery if they think they have questions [regarding jurisdiction]." Hr'g Tr., Dkt. No. 31, at 5:6–8. Defendants remain free to conduct discovery related to jurisdiction should they remain unsatisfied after MidCap's filing of a supplemental statement.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 20) is **DENIED**. MidCap is directed to file a supplemental jurisdictional statement that better explains (e.g. in an organizational chart) the complex makeup of MidCap and identifies with greater particularity the citizenship of Reliable within **thirty days** of the date of this order.

**SO ORDERED** this 19th day of July, 2019.

 s/ William C. Griesbach
 William C. Griesbach, Chief Judge
 United States District Court